# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# NEW ALBANY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:16-cv-00096-TWP-DML ) |
| EVELYN WILLIAMS, | ) ) ) |
| Defendant. | ) |

### ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on cross-motions for summary judgment. The Government initiated this action to collect unpaid civil tax penalties that were assessed against Defendant Evelyn Williams ("Evelyn"). (Filing No. 1 at 1.) Evelyn asserts that she is not liable for the assessment because nonpayment of the debt was not willful and she had no actual knowledge of the debt. On June 14, 2017, the Government filed a Motion for Summary Judgment (Filing No. 57), and on July 29, 2017, Evelyn filed a Cross-Motion for Summary Judgment (Filing No. 64). For the following reasons, the Court **grants in part and denies in part** the Government's Motion, and **denies** Evelyn's Cross-Motion.

## I. BACKGROUND

The Government brought this action to collect certain unpaid civil penalties that were assessed against Evelyn pursuant to 26 U.S.C. § 6672, commonly referred to as trust fund recovery penalties ("Trust Fund Penalties"). Every employer is required to withhold certain taxes from employees' wages and to hold those amounts in trust for the United States. *See, e.g.*, 26 U.S.C. § 7501. These taxes are referred to as trust fund taxes. *Slodov v. United States*, 436 U.S. 238, 243 (1978). Employees are credited with payments when they are withheld, whether or not the

employer actually pays the government. *Id.*; *see also* 26 U.S.C. § 3403. If the employer is a corporation and fails to turn over the withheld taxes to the Internal Revenue Service ("IRS"), the government loses the revenue. In order to protect against such losses, the individuals responsible for ensuring that the trust fund taxes are paid, who "willfully" fail to do so, may be held personally liable. *See* 26 U.S.C. § 6672. Section 6672 allows the government to collect tax liabilities from an individual with significant control over a company's funds, when that company fails to pay to the IRS the payroll taxes withheld "in trust" from the company's employees' paychecks. Under 26 U.S.C. § 6672(b)(1), the IRS generally must give a responsible person notice that they may be subject to a § 6672 assessment.

Evelyn Poston and Brian Williams ("Brian") married in December 1995, and Evelyn changed her last name with the Social Security Administration from Poston to Williams in 1996. ([Filing No. 81 at 5](#).) Brian passed away in September of 2012. ([Filing No. 65 at 10](#).)

During their marriage, Brian and Evelyn were the owners of Anytime Locksmiths, Inc. ("Anytime"), which was incorporated in 2002. Evelyn was a corporate officer and majority shareholder for Anytime. ([Filing No. 57-2 at 109](#).) She signed checks and paid Anytime's creditors[1] and ran the business' day-to-day operations. ([Filing No. 81 at 30](#).)

Anytime began to experience financial struggles shortly after it was incorporated.[2] Brian was described by some employees as irresponsible with corporate funds and of having an erratic temper that cost the company customers. ([Filing No. 58 at 7](#).) In the first months of its existence, Anytime failed to turn over withholding taxes of its employees to the IRS for the third quarter of 2002. *Id.* In fact, Anytime failed to pay withholding taxes collected and held in trust for its

---

[1] Evelyn alleges that Brian had substantial control over which creditors and bills were paid first.

[2] The Williamses had other failed businesses due to similar corporate financial mishandling.

2

employees for most of the quarters that it was in existence. (Filing No. 57-9.) Multiple employees had knowledge that Anytime was failing to pay its taxes. Employee Donna Bundy testified:

> [H]e'd take money and spend it on stuff that really they didn't need, and then when it come [sic] time to pay bills, they didn't have the money because he would waste the money.
>
> It was him who would – and then Evelyn would say, "Why would you do that because we needed to pay taxes" or we needed this to do this.

(Filing No. 57-5 at 34).

In 2004, IRS Revenue Officer Justin Whitaker ("Whitaker") was assigned to collect past due withholding tax liabilities from the Williamses' businesses – Anytime and another business, EZ Towing, Inc.[3] (Filing No. 81 at 7.) On December 13, 2004, Whitaker met with the Williamses to discuss the past due withholding tax liabilities of Anytime. (Filing No. 57-8 at 3.) At this meeting, Whitaker completed Brian's Form 4180-Report of Interview with Individual Relative to Trust Fund Recovery Penalty ("Brian's Form 4180"), which Brian signed as complete and accurate. (Filing No. 65-13.) Brian's Form 4180 indicated that he is the Owner/President of Anytime and that his home address was "706 Lakecrest Ave., High Point, NC 27265" ("706 Lakecrest Avenue"). On February 22, 2005, Whitaker completed Evelyn's Form 4180-Report of Interview with Individual Relative to Trust Fund Recovery Penalty ("Evelyn's Form 4180") by telephone, which indicated that she was the Vice President and that her address is "706 Lakecrest Ave., High Point, NC, 27265". (Filing No. 65-14 at 2.)

After conducting the interviews, Whitaker determined that both Brian and Evelyn were liable for the § 6672 penalty due to their status in the company, having joint check signing authority

---

[3] EZ Towing, Inc. was a business incorporated in 1997 by Evelyn and Brian Williams. The business towed vehicles and unlocked cars. As president of this company, Evelyn signed annual reports with the North Carolina Department of Revenue. In July 2002, Evelyn and Brian incorporated Anytime as a separate company to continue the locksmith-related tasks that EZ towing was already conducting. Anytime was created in part, because Brian wanted a company to be listed at the beginning of the phone book.

including authorizing payroll deposits, and jointly directing payments of bills. (Filing No. 65-16 at 16-17.) On September 2, 2005, Whitaker sent Letter 1153, by certified mail, to "Evelyn K. Poston"[4] at 1388 Blair Street, Thomasville, North Carolina 27360 ("1388 Blair Street"). (Filing No. 65-15 at 3.) The IRS uses Letter 1153 to satisfy preliminary notice requirements under § 6672. Whitaker sent Brian's Letter 1153, by certified mail, to 706 Lakecrest Avenue (Filing No. 65-18). On September 14, 2005, Evelyn's Letter 1153 was returned to the IRS marked as undeliverable. (Filing No. 65-16 at 18.) On September 28, 2005, Brian's Letter 1153 was returned to the IRS marked as unclaimed. *Id.*

Prior to the mailing of Letters 1153 in 2005, the Williamses last completed personal married filing jointly tax returns for tax years 1998 through 2000. (Filing No. 81 at 6; Filing No. 68 at 11.) The Williamses did not file personal tax returns for years 2001 through 2004, despite being legally required to do so, and the IRS prepared substitute returns. (Filing No. 81 at 6.) The parties dispute the meaning of the contents of a document from the IRS's Integrated Data Retrieval System ("IDRS"). The document indicates an address update for cycle 19993708 (Filing No. 65-7). It lists both Brian and Evelyn Williams' names along with the 706 Lakecrest Avenue address. *Id.* The Government contends that this document is related to *only* the account of Brian Williams, not Evelyn Williams. Evelyn argues that this document evidences that her address was updated to 706 Lakecrest Avenue according to IRS internal documents when the Williamses' joint 1998 tax return was processed on cycle date 19993708. (Filing No. 81 at 6.) As a result of the tax withholding liabilities alleged against Evelyn, her Social Security earnings were levied in 2014. (Filing No. 81 at 10.) The Government seeks a decree that Evelyn is indebted to the United States in the amount of $93,023.91, plus statutory interest for unpaid tax withholdings. (Filing No. 1 at

---

[4] Evelyn testified that she had not lived at the Blair Street address since at latest, 1995.

[2](.)  Evelyn argues the § 6672 assessment was not properly executed, is invalid and cannot be enforced. ([Filing No. 65 at 10](.))

## II.     LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is only appropriate by the terms of Rule 56 where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56. This notion applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996). Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the court's] review of the record requires that [the court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Ins.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

A court is not permitted to conduct a paper trial on the merits of a claim and may not use summary judgment as a vehicle for resolving factual disputes. *Ritchie v. Glidden Co., ICI Paints World-Grp.*, 242 F.3d 713, 723 (7th Cir. 2001); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Indeed, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir.

2003) ("these are jobs for a factfinder"); *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).

### III. DISCUSSION

The Government seeks summary judgment against Evelyn for violation of § 6672. Evelyn concedes that she is a responsible person ([Filing No. 81 at 30](#)), however, she denies that her failure to remit employment taxes was willful. She seeks summary judgment that she is not liable for the Trust Fund Penalties due to the Government's failure to provide a preliminary notice to her last known address. Because the last known address that the preliminary notice was sent to is particularly important, the Court will first address the notice issue.

### A. Notice

Section 6672 includes a preliminary notice requirement in which the Government must notify the taxpayer in writing by mail or in person that the taxpayer shall be subject to an assessment of penalty. 26 U.S.C. § 6672 (b)(1). This is important because a taxpayer may challenge her underlying tax liability if she "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such liability." *Gyorgy v. C.I.R.*, 779 F.3d 466, 471 (7th Cir. 2015) (citations omitted). For valid notice, the IRS fulfills its duty, regardless of *actual* receipt, when the IRS sends the notice to the taxpayer's last known address. *Id.* at 475-76. Treasury Regulation § 301.6212-2 defines "last known address" as "the address that appears on the taxpayer's most recently filed and processed tax return, unless the Internal Revenue Service (IRS) is given clear and concise notification of a different address." 26 C.F.R. § 301.6212-2. Seventh Circuit case law has found such clear and concise notification present "either in writing—through a signed statement, a response to certain correspondence from

the IRS or the IRS's change-of-address form—or by oral statement directly to an IRS employee who initiated contact with the taxpayer." *Gyorgy,* 779 F.3d at 475.

Evelyn argues that the § 6672 assessment is invalid because the preliminary notice was not mailed to her last known address. ([Filing No. 81 at 10.](#)) She contends that 706 Lakecrest Avenue was her last known address. The IRS responds that because Evelyn never properly updated her address, her last known address remained 1388 Blair Street, where Whitaker sent her preliminary notice. (*See* [Filing No. 68 at 3](#), 6.)

It is undisputed that Evelyn had not filed personal tax returns for the 2001, 2002, 2003, and 2004 tax years. Moreover, there is a factual dispute as to whether any of Evelyn's previously filed joint personal tax returns for years 1998, 1999, and 2000 were complete and properly processed which would act to update Evelyn's last known address in the IRS's internal systems. A complete tax return must contain the taxpayer's social security number and signature. While the taxpayer has the burden of proving that a notice of deficiency was not sent to her last known address, Evelyn has put forth sufficient evidence to raise a material, factual dispute. *See Noyes v. Comm'r of Internal Revenue,* 113 T.C.M. (CCH) 1127 (T.C. 2017).

Evelyn points the Court to an internal IRS document that lists "Brian F & Evelyn K. Williams" with an address of "706 Lakecrest Ave" ([Filing No. 68-16](#)). She contends that this record was updated after her 1998 joint tax return was processed by the IRS. The IRS responds that this document evidences that Brian's address was updated and that this record pertains to Brian's account alone, rather than updating both of their addresses ([Filing No. 68 at 25](#)) ("[T]he Integrated Data Retrieval System ("IDRS") Document cited by Evelyn refers to Brian Williams

only.⁵ A less redacted version of that document shows that the IRS employee queried Brian Williams's social security number, not Evelyn Williams's. This is reflected by the fact that Brian Williams's social security number follows the command code. ([Filing No. 68-16](#).) The Government also argues that because Evelyn cannot tell it what information the 1998 (nor 1999 and 2000) tax returns actually included and if it was complete, this defeats her argument that she had updated her last known address. ([Filing No. 68 at 26](#).) At this juncture, because Evelyn moved for summary judgment on the notice issue, the Court views the facts in a light most favorable to the Government, as the non-moving party. Because the document at issue did not pertain to her updating her account's last known address by filing a complete tax return,⁶ summary judgment is precluded for Evelyn on this basis.

Evelyn also argues that her telephone interview with Whitaker provided the IRS with clear and concise notice of her updated address. As noted previously, Evelyn's Form 4180, filled out by Whitaker, lists her address as 706 Lakecrest Avenue. The IRS responds that this interview did not sufficiently meet the IRS regulations to properly orally update an address.⁷ (Revenue Procedure 2001-18.) Whitaker sent the notice on September 2, 2005. *See* Rev. Pro. 2001-18. The notice provides a procedure for clear and concise oral notification:

> Clear and concise oral notification is a statement made by a taxpayer directly to a Service employee, who initiated contact with the taxpayer on an active account, informing the Service employee that the taxpayer wishes the address of record changed to a new address. In addition to the new address, the taxpayer must provide

---

⁵ The Integrated Data Retrieval System (IDRS) is a system which enables IRS employees to have instantaneous visual access to certain taxpayer account information. See [https://www.irs.gov/ publications/ 2017-document-6209-adp-and-idrs-information](#), (Section 14).

⁶ The Government must prove notice to be entitled to summary judgment as well, but its summary judgment motion will be discussed viewing the facts in a light favorable to Evelyn as this is a cross-motion for summary judgment.

⁷ Because this is the only instance where Evelyn alleges to have communicated an updated address through clear and concise notice, the Court will only analyze Evelyn's purported oral statement to Revenue Officer Whitaker. To that end, any written or oral statements by Brian regarding his address are irrelevant as it is undisputed that Revenue Officer Whitaker interviewed Brian and Evelyn separately. (*See* [Filing No. 81 at 20](#).)

> the taxpayer's full name, old address, and social security number and/or employer identification number. The Service employee should follow established procedures to determine that the person providing the information is in fact the taxpayer whose address of record will be changed.

*Id.*, 2001-1 C.B. IV (2001). It is undisputed that Whitaker initiated contact with Evelyn on an active account. However, it is unclear whether Evelyn notified Whitaker that she wanted to change her address of record—or if her address of record was already 706 Lakecrest Avenue obviating the need to change her last known address to the address at issue as it would be redundant. Assuming without deciding, that Evelyn's address of record at the time of her interview was 1388 Blair Street, the remaining requirements for effecting an oral address change remain material, factual disputes.

Lastly, the Government contends that Evelyn's unclean hands in neglecting to file personal tax returns for five years preceding the mailing of the preliminary notice, precludes her from complaining that the IRS did not send the notice to her last known address. The Government also argues that Evelyn moved frequently. Unlike the *Gyorgy* case that the Government cites, Evelyn argues (and has put forth sufficient evidence at this stage) that the IRS did have a record of an address update from her as evidenced by an internal updated address record and her oral statement to Whitaker of the 706 Lakecrest Avenue address. Thus, unlike the other unclean hands cases considered by the Seventh Circuit, Evelyn argues that the address where the notice should have been sent was the most recent and reliable address that the IRS had available in its files. "To be sure, *Gyorgy* is correct that the IRS must use reasonable diligence to determine which address is the last known address under the applicable definition. Courts have held, for example, that the IRS must carefully process and review more recent tax returns for a new address." *Gyorgy,* 779 F.3d at 478 (citations omitted). The fact that Evelyn failed to file tax returns for years 2001 through 2005 would not negate an updated address that could be ascertained from 1998 through 2000 joint tax returns if she filed complete returns for those years.

At the summary judgment stage, the Court must view the evidence in a light favorable to the Government as the non-moving party on the issue that the notice was invalid. There are material, factual disputes regarding Evelyn's last known address and if it had been updated (or should have been updated) to 706 Lakecrest Avenue at the time Whitaker mailed the preliminary notice for the § 6672 assessment. Therefore, the Court **denies** Evelyn's Motion for Summary Judgment ([Filing No. 64](#)).

B.  **Trust Fund Recovery Penalty**

The Government contends that the undisputed facts establish that Evelyn failed to pay employment taxes as required under § 6672. There are two bases as to why summary judgment is precluded on the Government's claims. First, as discussed at length above, the Government is required to give Evelyn preliminary notice as part of its *prima facie* case before any personal liability may attach, and she has put forth sufficient evidence to raise material, factual disputes on the notice issue. Second, Evelyn also raises a substantive defense to the willfulness prong of § 6672.

As noted earlier, employers have a duty to withhold income and Federal Insurance Contribution Act taxes from their employees' wages and to hold such collections in trust for the United States. *U.S. v. Kim,* 111 F.3d 1351, 1356 (7th Cir. 1997) (citations omitted). The amounts collected must be paid to the United States quarterly. *Id.* "While it is not always required that these funds be segregated by the employer prior to being paid over to the IRS, the law is clear that the funds may not be used by the employer for any other obligations, including but not limited to operating expenses." *Id.* The Supreme Court has held that the "officers and employees of the employer responsible for effectuating the collection and payment of trust-fund taxes who willfully fail to do so are made personally liable to a 'penalty' equal to the amount of the delinquent taxes."

*Slodov v. United States,* 436 U.S. 238, 244–45 (1978). Thus, courts examine two elements for personal liability under § 6672: (1) responsible person and (2) willfulness. *Id. See Kim,* 111 F.3d at 1357.

1. **Responsible Person**

Evelyn concedes that she was a responsible person for Anytime under the legal definition for the quarters at issue. (*See* Filing No. 81 at 30.) "A person is responsible under section 6672 if he retains sufficient control of corporate finances that he can allocate corporate funds to pay the corporation's other debts in preference to the corporation's withholding tax obligations." *Bowlen v. U.S.,* 956 F.2d 723, 728 (7th Cir. 1992). This control may be, but not necessarily be, exclusive control over corporate finances. *See id.* Evelyn had several indicia of responsible person status that many courts have found meet the test, such as being a majority shareholder, day-to-day control over the front office, and check signing authority. *Id.* (Filing No. 81 at 30). Because there is no factual dispute whether Evelyn was a responsible person under § 6672, summary judgment for the Government is **granted** as to this issue.

2. **Willfulness**

First, a responsible person must willfully act in order for personal liability to attach. *Kim,* 111 F.3d at 1357. Second, it must be established that the "responsible person" "willfully" failed to collect, account for or pay over the tax owed.

> "Willful" in this context means that the person either knew the taxes were not being turned over to the government and nonetheless opted to pay other creditors, or recklessly disregarded a known risk that the taxes were not being paid over; the government is not required to establish that the responsible person deliberately sought to defraud the government.

*Id.* (citations omitted). It is settled law in the Seventh Circuit that the responsible person is under a duty to use all "unencumbered funds" available to the corporation to pay back taxes once the

11

responsible person becomes aware that taxes have gone unpaid in past quarters. *Id.* at 1357-58. Failure to do so amounts to willfully failing to pay the taxes. *Id.*

Evelyn argues that her failure to remit employment taxes was not willful, rather it was due to her husband's abuse and manipulative control undermining her ability to make independent decisions and comply with obligations under the tax laws. (Filing No. 81 at 27.) Much of the dispute between the parties involves the amount of control Evelyn exercised over Anytime's finances, and the amount of final say her husband had in any matter that was contrary. It is highly fact determinative and some of the depositions reveal differing accounts regarding the degree each spouse had responsibility and handled the company's finances.

The IRS contends that the cases that have accepted a spousal abuse theory consider it to be a defense to responsible person status, not willfulness. (Filing No. 58 at 19.) Evelyn is correct that the Government has misread the case that it cites for this proposition. In *Barrett v. U.S.,* 217 Ct. Cl. 617, 626-27 (1978), the court held a spouse that was dominated into signing checks as her husband directed was neither responsible nor willful in her failure to pay taxes. ("It requires little discussion to find that a woman dominated by her husband, who never signed a company check unless authorized by her husband, does not act willfully in failing to pay over withheld taxes. Plaintiff tried to get her husband to pay the taxes in issue but was unsuccessful.").

There are disputed issues of material fact regarding when Evelyn became aware that Anytime's taxes were not being paid to the IRS. Evelyn alleges that she did not become aware of the unpaid taxes until she was contacted by Whitaker in late 2004 and that her husband undermined her ability to gain information. (Filing No. 81 at 26-27.) However, Edwina King ("King"), Anytime's accountant, declared that Evelyn was aware that Anytime was behind on taxes as they

accrued because she personally talked with Evelyn when the company fell behind on paying taxes.[8] (Filing No. 57-3 at 2-3.) Nevertheless, Evelyn could still be held willfully liable absent actual knowledge if she disregarded a known risk that taxes were not being paid. While it is undisputed that Evelyn was aware that other bills were not being paid by the floundering company (which might amount to reckless disregard of a known risk that taxes might also be unpaid), Evelyn's defense is that Brian's abuse and financial tyranny caused her not to pay Anytime's employment taxes. (Filing No. 81 at 27; Filing No. 57-2 at 77-79.) The same might be said of Evelyn's failure to use unencumbered funds to pay past due withholding taxes after her admitted knowledge that she knew they were unpaid after November 2004. "Funds are encumbered only where the taxpayer is legally obligated to use the funds for a purpose other than satisfying the preexisting employment tax liability and if that legal obligation is superior to the interest of the IRS in the funds." *Kim,* 111 F.3d at 1359 (citation omitted). To the extent that Evelyn admits to using unencumbered funds to pay bills such as wages, rent, utilities, business supplies, and fuel, her primary defense is that bills were paid according to which bills Brian authorized her to pay. (Filing No. 57-2 at 86-90.)

Because the Government moved for summary judgment for Evelyn's liability under § 6672, the Court must construe all inferences in favor of Evelyn against whom the summary judgment motion is raised on this issue. There are material, factual disputes regarding the amount of control Evelyn had over Anytime's corporate finances and whether Brian exercised final authorization over which bills to pay through abuse, which might negate Evelyn's willfulness in the failure to turn over Anytime's employment taxes to the IRS. Therefore, the Court must **deny** the Government's Motion for Summary Judgment on this issue. (Filing No. 57.)

---

[8] King stated that she did not deal with Brian because he was brash mouthed and had threatened her. Therefore, she only dealt with Evelyn when it came to preparation of personal and corporate tax returns. (Filing No. 57-3 at 2.)

### III. CONCLUSION

For the reasons stated above, the Government's Motion for Summary Judgment (Filing No. 57) is **GRANTED in part** and **DENIED in part**. It is **GRANTED** on Evelyn's responsible person status under § 6672. It is **DENIED** on Evelyn's willfulness under § 6672. Evelyn's Motion for Summary Judgment (Filing No. 64) on her notice defense is **DENIED.**

The matter remains scheduled for trial on October 1, 2018 and final pretrial conference on September 5, 2018.

**SO ORDERED.**

Date: 1/30/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jordan Andrew Konig
U.S. DEPARTMENT OF JUSTICE - Tax Division (Washington DC)
jordan.a.konig@usdoj.gov

Steven Spinetti Tennyson
U.S. DEPARTMENT OF JUSTICE
steven.tennyson@usdoj.gov

Jamie Andree
INDIANA LEGAL SERVICES, INC.
jamie.andree@ilsi.net

John E. Brengle
INDIANA LEGAL SERVICES
john.brengle@ilsi.net

Matthew Aaron Hutchens
INDIANA LEGAL SERVICES, INC.
matthew.hutchens@ilsi.net